IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ALEX PARKER, | ) | CV NO 09-00574 DAE LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CB RICHARD ELLIS HAWAII, | ) | |
| INC., a Domestic Profit Corporation; | ) | |
| CB RICHARD ELLIS, INC., a | ) | |
| Foreign (Delaware) Profit | ) | |
| Corporation; DOE INDIVIDUALS | ) | |
| 1-50; DOE ENTITIES 1-50; DOE | ) | |
| CORPORATIONS 1-50; DOE | ) | |
| PARTNERSHIPS 1-50, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DENYING PLAINTIFF'S MOTION FOR ENLARGEMENT OF TIME,
GRANTING IN PART AND DENYING IN PART  DEFENDANTS' MOTION
TO STRIKE EXHIBITS TO PLAINTIFF'S CONCISE STATEMENT, AND
<u>GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

On December 9, 2010, the Court heard Defendants CB Richard Ellis,

Hawai'i, Inc., CB Richard Ellis, Inc., Doe Individuals 1-5, Doe Entities 1-50, Doe

Corporations 1-50, and Doe Partnerships 1-50's' ("Defendants" and/or "CBRE")

Motion for Summary Judgment and Motion to Strike Exhibits to Plaintiff's

Concise Statement in Opposition to the Defendants' Amended Concise Statement

of Facts.  The Court also heard Plaintiff Alex Parker's ("Plaintiff" and/or "Parker")

Motion for Enlargement of Time.  Andre S. Wooten, Esq., appeared on behalf of

the Plaintiff and Christopher J. Cole, Esq., and Melissa H. Lambert, Esq., appeared

on behalf of the Defendants.

For the following reasons, the Court **GRANTS IN PART** and

**DENIES IN PART** Defendants' Motion to Strike (Doc. # 72), **DENIES** Plaintiff's

Motion for Enlargement of Time (Doc. # 76), and **GRANTS** Defendants' Motion

for Summary Judgment (Doc. # 25).

## BACKGROUND

This case arises from Defendants rescinding a contingent offer of

employment to Plaintiff after checking Plaintiff's credit.  (Doc. #1, Compl. ¶¶ 13-

15.)  Plaintiff, an African-American, claims relief on two grounds, both based on

Title VII of the Civil Rights Act of 1964.  42 U.S.C. § 2000e, *et. seq.*  (Id. ¶¶ 16-

21.)  Plaintiff's first claim for relief alleges disparate treatment per 42 U.S.C.

§ 2000e-2(a)(1).  (Id. ¶¶ 16-18.)  Plaintiff's second claim for relief alleges

disparate impact per 42 U.S.C. § 2000e-2(a)(2).  (Id. at 18-21.)

I.      Factual Background

     A.      Defendants' Corporation

        CBRE is a global company with over 600 job classifications.  (Doc. # 28-1, Decl. Melanie Sawyer ("Sawyer") ¶ 4.)  Job applicants are subject to a standard background check that includes social security validation, verification of prior employment, and verification of education.  (Id. ¶ 5.)  Certain jobs require additional background screening, such as a credit check.  (Id.)  All background checks are conducted by an outside vendor, HireRight.  (Id. ¶ 6.)

        Credit checks are required for jobs that manage the financial obligations of CBRE or its clients, including the Associate Accountant position for which Plaintiff applied.[1]  (Id. ¶  7; Doc. # 1,Compl. ¶ 8.)  If an applicant's credit check shows one or more items in collections, public records, and/or negative accounts, the application is marked "pending" by HireRight.  (Doc. # 28-1, Sawyer ¶ 8.)  A pending application will then be reviewed by CBRE to determine whether the applicant's credit background meets CBRE Standards.  (Id.)

---

[1]An Associate Accountant is responsible for accounting and financial reporting for a portfolio of CBRE clients.  (Doc. # 28-1, Sawyer ¶ 9.)

B.     Plaintiff's Application and Offer

Parker applied for the position of Associate Accountant in CBRE's Hawai'i Client Accounting Office.  (Id. ¶ 9.)  Parker subsequently interviewed with Waylon Coy, Alicia Nakamoto, and Jay Schalow in January 2008. (Doc. # 1, Compl. ¶ 8.)  On January 13, 2008, Ms. Nakamoto allegedly called Parker and offered him the position.[2]  (Id. ¶ 10.)

Around the same time Ms. Nakamoto notified Melanie Sawyer, a human resources manager for CBRE based in Minneapolis, Minnesota, that the Hawai'i Client Accounting Office wanted to make an offer to Plaintiff.  (Doc. # 28-1, Sawyer ¶¶ 1, 10.)  Ms. Sawyer advised that the office had permission to extend a contingent job offer to Parker pending a successful completion of a background screen.  (Id. at ¶ 11.)  CBRE subsequently mailed Plaintiff an offer letter dated January 28, 2008 that specifically stated that "[t]his offer and your continued employment are contingent upon satisfactory results on a background investigation and reference check . . . ."  (Id. at 12; Doc. # 26-7, Evidentiary R. Case ("ERC") ¶ 2.)

---

[2]Plaintiff and Defendants do not agree as to when this oral offer was made. Plaintiff, as noted, claim January 13, 2010, while Defendants claim January 28, 2010.  (Doc. # 28-1, Sawyer ¶ 14.)

On January 28, 2008, Parker electronically consented to CBRE conducting a background check, including the release of consumer reports to CBRE.  (Doc. # 26-7, ERC ¶¶ 3-4.)  CBRE then initiated the background screening process, including the credit check, through HireRight.  (Doc. #26-1, Sawyer ¶ 17.) While conducting the screening process, HireRight discovered a 2004 federal tax lien and ten accounts in collection status and marked Parker's application status as pending.  (Id. ¶ 17.)

Ms. Sawyer then reviewed the background check.  (Id. at ¶¶ 17-18.) She concluded that Parker did not meet CBRE standards because his credit history was inconsistent with the financial responsibility necessary for the position.  (Id. ¶¶ 17-18.)  Ms. Sawyer conferred with Ms. Johnstad, another human resources manager, who agreed with Ms. Sawyer's decision.  (Id. ¶¶ 18-20.) Both Ms. Sawyer and Ms. Johnstad claim they were unaware of Parker's race when they reviewed his application.  (Doc. # 26-7, ERC ¶¶ 24-25.).

On February 1, 2008, Ms. Sawyer informed Parker that he would not be hired based on his credit report.  (Doc. # 1, Compl. ¶ 13.)  Plaintiff contested CBRE's decision not to hire him but did not contest the validity of the credit report.  (Doc. # 26-1, Sawyer ¶ 24.)  In response, Ms. Sawyer and Ms. Johnstad contacted Alison Caplan, CBRE's Director of Staffing, who reviewed the case and

agreed that Parker's contingent job offer should be revoked.  (Id. at ¶ 25.)  Like Ms. Sawyer and Ms. Johnstad, Ms. Caplan claims she was unaware of Parker's race when she agreed with the decision to revoke his offer.  (Doc. # 26-3, Decl. Alison Caplan ("Caplan") ¶ 6.)

I.      Procedural History

        On December 7, 2009, Parker Filed his Complaint against the Defendants.  (Doc. # 1).  On March 2, 2010, Defendants answered.  (Doc. # 4.)

        On June 16, 2010, Parker's first attorney, Richard C. DeWaele, Esq., filed a Motion to Withdraw as Counsel.  (Doc. # 15.)  On the same day, CBRE served on Plaintiff's First Request for Admissions.  (Doc. # 14.)

        On June 22, 2010, Magistrate Judge Leslie E Kobayashi extended the deadline to file dispositive motions to August 6, 2010.  (Doc. # 18.)

        On July 7, 2010, Judge Kobayashi granted Mr. DeWaele's Motion to Withdraw as Counsel for Parker.  (Doc. # 19.)

        On August 4, 2010, Andre S. Wooten, Esq., entered his appearance as counsel on behalf of Plaintiff.  (Doc. # 24.)

        On August 5, 2010, CBRE entered into evidence the uncontested admissions served on Plaintiff on June 16, 2009.  (Doc. # 23.)

On August 6, 2010, Defendants filed their Motion for Summary Judgment.  (Doc. # 25.)

On August 19, 2010, Parker filed an ex-parte Motion to Continue Defendants' Motion for Summary Judgment.  (Doc. # 31.)

On August 27, 2010, the Court granted Plaintiff's request to continue Defendants' Motion for Summary Judgment and mandated that Plaintiff file an Opposition by October 25, 2010.  (Doc. # 41.)

On October 20, 2010, Plaintiff filed an ex-parte Motion for Enlargement of Time to Answer Defendants' Motion for Summary Judgment. (Doc. # 63.)

On October 25, 2010, the Court declined to change the deadline for Plaintiff to file an Opposition to Defendants' Motion for Summary Judgment. (Doc. # 68.)

On October 25, 2010, the Plaintiff filed its Opposition to Defendants' Summary Judgment Motion as well as a Concise Statement in Opposition to Defendants' Amended Concise Statement of Facts.  (Docs. ## 69, 70.)

On November 1, 2010, Defendants moved to strike Plaintiff's Concise Statement of Facts.  (Doc. # 72.)  Defendants also filed their Reply to

Plaintiff's Opposition to Defendants' Motion for Summary Judgment.  (Doc. # 73.)

On November 3, 2010, the Court *sua sponte* continued the hearing on Defendants' Motion for Summary Judgment to December 9, 2010. (Doc. # 74.)

On November 9, 2010, Plaintiff filed a Motion for an Enlargement of Time to Obtain a Declaration of an EEOC Investigator.  (Doc. # 76.)

On November 12, 2010, the Court denied Plaintiff's Ex Parte Motion for Enlargement of Time to Answer Defendants' Motion for Summary Judgment filed on October 20, 2010.  (Doc. # 80.)

## STANDARD OF REVIEW

I.    Motion to Strike

A.    Rule 56(c)(4)[3]

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  "While the facts underlying the affidavit must be of a type that would be admissible as evidence, . . . the affidavit itself does not have to be in a form that would be admissible at trial."  Hughes v. United

---

[3]As of December 1, 2010, Rule 56 changed.  The language the parties discuss, previously found in Rule 56(e) is now in Rule 56(c)(4).  See Fed. R. Civ. P. 56.

States, 953 F.2d 531, 543 (9th Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Thus, courts focus not on the form of the affidavits proffered but instead the admissibility of its contents.  Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).

Courts will look to the Federal Rules of Evidence to determine if the contents of an affidavit would be admissible.  See, e.g., S.E.C. v. Phan, 500 F.3d 895, 913 (9th Cir. 2007) (noting proper foundation for a Rule 56 declaration can be established by any manner permitted by Federal Rules of Evidence 901(b) or 902); Orr v. Bank of America NY & SA, 285 F.3d 764, 774 (9th Cir. 2002) (same); Fonseca v. Sysco Food Services of Arizona, Inc., 347 F.3d 840, 846 (9th Cir. 2004) (deciding that declarations that contain hearsay can be admissible because they could be presented in an admissible form at trial); Block v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir. 2001) (reversing a district court for relying on inadmissible hearsay per Federal Rule of Evidence 802).  A failure to adhere to the requirements of Rule 56(e) is subject to a motion to strike.  See, e.g., Briggs v. Potter, 463 F.3d 507, 512 (6th Cir. 2006) (agreeing with a district court's decision to strike a part of an affidavit that did not comply with Rule 56(e)).

B.   <u>Federal Rules of Evidence</u>

"It is well settled that unauthenticated documents cannot be considered on a motion for summary judgment."  <u>Canada v. Blain's Helicopters, Inc.</u>, 831 F.2d 920, 925 (9th Cir. 1987); <u>Orr</u>, 285 F.3d at 773 ("We have repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment.")  Indeed, "authentication is a 'condition precedent to admissibility' and . . . is satisfied by 'evidence sufficient to support a finding that the matter in question is what the proponent claims.' "  <u>Orr</u>, 285 F.3d at 773 (quoting Fed. R. Evid. 901(a)).  "However, a proper foundation need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902."  <u>Id.</u> at 774.

Rule 901(b) lists ten means of authentication while Rule 902 describes self-authenticating documents.  <u>See</u> Fed. R. Evid. 901(b), 902.  Rule 902(11) specifically states

> The original or a duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by a written declaration of its custodian or other *qualified person* . . ., certifying that the record:
>
> (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by a person with knowledge of those matters;
> (B) was kept in the course of the regularly conducted activity;

10

and
(C) was made by the regularly conducted activity as a regular practice.

Id. at 902(11).[4]  "The custodian or other qualified person needed for authentication under Rule 902(11) is broadly interpreted to require . . . that the witness understand the record-keeping system."  OKI America, Inc. v. Advanced Micro Devices, Inc., 2006 WL 271155, C 04-03171 CRB, at *4 (N.D. Cal Sept. 21, 2006) (quotations omitted) (citing United States v. Ray, 930 F.2d 1368, 1370 (9th Cir. 1990).

The Federal Rules of Evidence also require evidence to be relevant. See Fed. R. Evid. 401.  Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the cation more

---

[4]Rule 803(6) is an exception to the Hearsay Rule, discussed *infra*.  It states:

(6) Records of Regularly Conducted Activity.--A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

probable or less probable than it would be without the evidence." Id. [T]he particular facts of the case determine the relevancy of a piece of evidence. United States v. Vallejo, 237 F.3d 1008, 1015 (9th Cir. 2001). "In the context of a racial disparate treatment claim, admissible background evidence must be relevant to determine the ultimate question: whether . . . the defendant intentionally discriminated against [the plaintiff] because of his race." Lyons v. England, 307 F.3d 1092, 1110 (9th Cir. 2002).

Finally the Rules of Evidence require that evidence cannot be hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). While hearsay is generally inadmissible, there are several exceptions. See Fed. R. Evid. 802 (general rule); Fed R. Evid. 803-07 (listing exceptions).

B.    Summary Judgment

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d

1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence

13

without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence' " must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.  Further, the Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996)).  "Conclusory allegations unsupported by factual data cannot defeat summary judgment."  Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence

14

and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.; see also Nelson v. City of Davis, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (citations omitted).  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required  to resolve in favor of the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

I.    Defendants' Motion to Strike Plaintiff's Exhibits attached to Concise Statement of Facts

Defendants claim that a number of Plaintiff's Exhibits are not in conformity with Rule 56(c)(4).  Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.")  The Court will consider each in turn.

A.    <u>Exhibits Not Properly Authenticated</u>

Plaintiff's Exhibit 10 appears to be an internal Equal Employment Opportunity Commission ("EEOC") memorandum that summarizes an interview that an unknown individual had with Ms. Sawyer and Ms. Johnstad. Plaintiff has not provided an affidavit or declaration of an individual who has personal knowledge of its contents, nor who claim to be its author or recipient. Defendants' Motion to Strike Plaintiff's Exhibit 10 is **GRANTED**.

Plaintiff's Exhibit 11 is a Due Diligence Report prepared by an unknown company that concerns Parker.  Plaintiff has not provided an affidavit or declaration of an individual who has personal knowledge of its contents, nor who claim to be its author or recipient.  Defendants' Motion to Strike Plaintiff's Exhibit 11 is **GRANTED**.

The second page of Plaintiff's Exhibit 13 is another memorandum to file concerning Parker.  Once more the author of the file is unclear Plaintiff has not provided an affidavit or declaration of an individual who has personal knowledge of its contents, nor who claim to be its author or recipient. Defendants' Motion to Strike the second page of Plaintiff's Exhibit 13 is **GRANTED**.

Plaintiff's Exhibits 19 through 30 appear to be statistical reports of Title VII allegations and charges in various cities through out the country, including Honolulu, Hawai'i.  It is not clear who prepared these reports or to whom they were sent.  It is not clear what time line the report reflects or against whom the charges were alleged.  Plaintiff has not provided an affidavit or declaration of an individual who has personal knowledge of the exhibits' contents, nor any individual who can claim to be their author or recipient.  Defendants' Motion to Strike Plaintiff's Exhibits 19 through 30 is **GRANTED**.

It is unclear to this Court what is contained in Plaintiff's Exhibit 33.  It is at least in part legislative history of a Hawaiian bill but also seems to contain a receipt as well as a list of publications and their availability on the internet.  Plaintiff has not provided an affidavit or declaration of an individual who has personal knowledge of the contents of Exhibit 33, nor who claim to be its author or recipient.  Defendants' Motion to Strike Plaintiff's Exhibit 33 is **GRANTED**.

The Court here also notes that Plaintiff has twice submitted supplemental declarations after the Court ordered October 25, 2010 deadline (Doc. # 63) in an attempt to cure the myriad problems relating to authentication.  Plaintiff did so both in its Memorandum in Opposition to Defendant's Motion to Strike

(Doc. # 83) on November 15, 2010, and in a Supplemental Declaration on December 6, 2010 (Doc. # 97).  Per Local Rule 56.1(h), "Supplemental affidavits and declarations may only be submitted with leave of court."  Plaintiff has not sought (nor obtained) such leave.

Not withstanding the failure to obtain leave from the Court, Plaintiff's attempt to authenticate these documents fail.  Plaintiff focuses primarily on Federal Rule of Evidence 902(11) and argues that the documents are self-authenticating.[5]  As noted, the Rule requires a *qualified person* to authenticate the documents, specifically someone who is at least familiar with the record keeping process.  See Ray, 930 F.2d at 1370.  Here Plaintiff produces only his own declaration asserting that the documents are "true copies."  Plaintiff is not (nor does he claim to be) familiar with the record keeping process of the documents he argues are self-authenticating.  Even if he was qualified as contemplated by Rule 902(11), he does not satisfy the requirements of the Rule. Specifically there is no declaration that the documents were (a) made at or near the time of the occurrence

---

[5]Plaintiff also mentions Rules 902(1) and 902(2). Rule 902(1) relates to documents under seal - there are no such documents here.  Rule 902(2) contemplates documents not under seal but bearing the signature of an officer or employee of an entity contemplated in 902(1).  There are no signed documents before the Court.  Finally, Plaintiff's argument surrounding Rules 803(6) and 803(8) are misguided. Both are exceptions to the Hearsay rule, and, although referenced in Rule 901(11), both are distinct from the authentication process.

of the matters set forth; (b) kept in the course of the regularly conducted activity; and (3) made as a regular practice.  <u>See</u> Fed. R. Civ. P. 902(11).  In sum, Plaintiff's argument that the documents are self-authenticating is meritless.

      B.    <u>Plaintiff's Hearsay Exhibits</u>

Plaintiff's Exhibit 12 appears to be a correspondence between Parker and the EEOC in which Plaintiff relates facts of the instant case to the EEOC.  Defendant asks that the exhibit be struck from the record as hearsay.  The Court cannot agree.  As noted earlier a court looks not to the form of the document but instead its content to determine if it complies with Rule 56(c)(4).  <u>Fraser</u>, 342 at 1036.  While not presently in form to be admitted as evidence, it may be that the contents of this correspondence can be admitted if properly introduced.  The same can be said of Plaintiff's Exhibit 15, which appears to be a similar correspondence.  The Court therefore **DENIES** Defendants' Motion to Strike Exhibit 12 and 15.

Plaintiff's Exhibit 34 through 37 appears to be legislative history of a Hawaiian statute.  Some exhibits contain instances of double hearsay.  (<u>See</u> Ex. 34.)  Plaintiff seems to be proffering this evidence for the truth of the matters asserted.  It is unclear to the Court (and Plaintiff does not explain) how Plaintiff could use the contents of these documents in the course of a trial without

running afoul of Rule 802 of the Federal Rules of Evidence.  Therefore, this Court

**GRANTS** Defendants' Motion to strike Plaintiff's Exhibits 34 through 37.[6]

      C.    <u>Irrelevant Exhibits</u>

          Finally Defendant contends that Exhibits 31 through 33 and

Exhibit 38 are irrelevant.[7]  Exhibits 31 through 33 are a Hawaiian statute that

makes it illegal for employers to take into consideration an employee's credit

history in certain situations.  It was enacted after the facts that gave rise to the

instant action.  Plaintiff is not bringing a claim pursuant to the statute and the mere

existence of a statute not tend to prove ro disprove Plaintiff's Title VII claims.

Therefore this Court **GRANTS** Defendants' Motion to Strike Plaintiff's Exhibits

31 through 33.

          Exhibit 38 is the *procedural* history of the same Hawaiian

statute.  The procedural history of a Hawaiian Statute does not tend to prove or

disprove Plaintiff's Title VII claims.  Therefore this Court **GRANTS** Defendants'

Motion to Strike Plaintiff's Exhibit 28.

---

[6]Having concluded that Exhibits 19 through 30 and the second page of
Exhibit 13 were not properly authenticated, this Court does not reach the issue of
whether they also violate Federal Rule of Evidence 802.

[7]Defendants also allege that Exhibits 34 through 37 are irrelevant.  The
Court does not reach that issue having already decided to strike those exhibits on
other grounds.

II.     Motion for Summary Judgment

     A.     Title VII Standards

          i.     Disparate Treatment Claims

"A disparate-treatment plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job-related action." Ricci v. DeStefano, 129 S. Ct. 2658, 2672 (2009). "To establish a prima facie case, plaintiffs must offer evidence that gives rise to an inference of unlawful discrimination." Hawn v. Executive Jet Mgmt., 615 F.2d 1151, 1156 (9th Cir. 2010) (quotations and modifications omitted).

In response to a summary judgment motion the plaintiff has the option of how to proceed in establishing its case. A plaintiff may proceed by using the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), burden shifting scheme or "may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the defendant.]" McGinest v. GTE Serv. Corp., 630 F.3d 1103, 1122 (9th Cir. 2004).[8]

In McDonnell Douglas, the Supreme Court held:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination.

_____

[8] The Plaintiff here does not specify how he would like to proceed. The Court will therefore consider both options in its analysis *infra*.

This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

411 U.S. at 802. Applying this test, the Ninth Circuit has stated that to establish a prima facie case of disparate treatment, the Plaintiff

must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably.

Chuang v. Univ. of Cal. Davis Bd. of Trustees, 225 F.3d 1115, 1123 (9th Cir. 2000). "Failure to produce evidence of qualification will typically prevent a plaintiff from satisfying either the second or fourth prong of the McDonnell Douglas test." Lyons v. England, 307 F.3d 1092, 1113 (9th Cir. 2002). After such a showing, the burden of production "shifts to the employer to articulate some legitimate nondiscriminatory reason for the challenged action. Id. at 1123-24 (citing McDonnell Douglas, 411 U.S. at 802). "[S]hould the defendnat carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true

reasons, but were a pretext for discrimination." Texas Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248, 248 (1981); Chuang, 225 F.3d at 1124 (same).

The plaintiff can make a showing of pretext sufficient to survive summary judgment in one of two ways.  First, the plaintiff can put forward an affirmative showing of evidence that the defendant is biased or that "a discriminatory [or retaliatory] reason more likely motivated the employer" when making the challenged termination decision.  Texas Dep't of Cmty. Affairs, 450 U.S. at 256.  Second, the plaintiff can show that the defendant's proffered explanation for its termination decision is "unworthy of credence" or otherwise not reliable.  Id.; Lindahl v. Air France, 930 F.2d 1434, 1438-39 (9th Cir.1991). The plaintiff can make either showing through direct or circumstantial evidence of discrimination.  See Chuang, 225 F.3d at 1124.

  ii. Disparate Impact Claims

"A disparate impact claim challenges employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." Rose v. Wells Fargo & Co., 902 F.2d 1417, 1423 (9th Cir. 1990).  To establish a prima facie case of disparate impact, the plaintiff must: 1) identify the specific selection criteria being challenged; 2) show disparate impact; and 3) prove

causation.  Id. at 1424; see also Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994 (1988).  As a general rule, the plaintiff must demonstrate with statistical evidence " ' that an employment practice selects members of a protected class in a proportion smaller than their percentage in the pool of actual applicants.' " Lawrence v. Department of Interior, 525 F.3d 916, 921 (9th Cir. 2008) (quoting Stout v. Potter, 276 F.3d 1118, 1122 (9th Cir. 2002).

Unlike a disparate treatment claim, however, before the burden shifts, "plaintiffs must do more than merely raise an inference of discrimination . . . ; they 'must actually prove the discriminatory impact at issue.' " Garcia v. Spun Steak Co., 998 F.2d 1480, 1486 (9th Cir. 1993) (quoting Rose, 902 F.2d at 1421.)  Thus it is not sufficient to present evidence raising an inference of discrimination but the plaintiff must actually prove it.  Potter, 276 F.3d at 1122.

Once proven, "the burden shifts to the defendant who may either discredit the plaintiff's statistics or proffer statistics of his own which show that no disparity exists." Rose, 902 F.2d at 1424.  The defendant "may also produce evidence that its disparate employment practices are based on legitimate business reasons, such as job-relatedness or business necessity." Id.  If the defendant is successful, the plaintiff must show that other selection devices without similarly undesirable effects would serve the employer's legitimate interest.  Id.

24

B.     Parker's Claims

i.     Judicial Admissions

As a preliminary matter, the Court will address the Defendants'

argument that Plaintiff's judicial admissions entitle them to judgment. FRCP Rule

36 allows a party to "serve on any other party a written request to admit, for the

purposes of the pending action only, the truth of any matters within the scope of

Rule 26(b)(1)."  Fed. R. Civ. P. 36(a)(1).[9]  Requests for admissions can relate to

facts, the application of law to facts, or opinions about either.  See id. 36(a)(1)(a)

Such matters are deemed admitted if not contested within 30 days.  Id. 36(a)(3).

Rule 36(b) further provides:

> A matter admitted under this rule is conclusively established unless
> the court, *on motion*, permits the admission to be withdrawn or
> amended. . . [T]he court may permit withdrawal or amendment when
> the presentation of the merits of the action will be subserved thereby
> and the party who obtained the admission fails to satisfy the court that
> withdrawal or amendment will prejudice that party in maintaining the
> action or defense on the merits.

Id. 36(b) (emphasis added).

In the instant case, Defendants served Plaintiff with their first

request for admissions on June 16, 2010.  (Doc. # 14.)  To date, Plaintiff has not

---

[9]Rule 26(b)(1) delineates the scope of discovery generally.  See Fed. R. Civ.
P. 26(b)(1).

responded to the request, and Defendant entered the admissions into evidence by

filing an Entry of Admissions more than thirty days after serving their request on

Plaintiff in accordance with Rule 36(a).  (Doc. # 23.)  In the request for admissions

were, *inter alia*:

11.    Defendants' consideration of Plaintiff's credit history was not an unlawful practice prohibited by Title VII of the Civil Rights Act of 1964, as amended, because it was related to the responsibilities of the position of Associate Accountant.

13.    Prior to the filing of the Complaint, neither Plaintiff nor anyone on Plaintiff's behalf conducted any investigation, statistical analysis, test, comparison or study to determine whether "DEFENDANTS' use of a particular employment practice of denying job applicants due to their credit reports causes a disparate impact on the basis of race . . ." as alleged in paragraph 20 of the Complaint.

15.    Plaintiff does not have any statistical evidence that demonstrates that "DEFENDANTS' use of a particular employment practice of denying job applicants due to their credit reports causes a disparate impact on the basis of race, African-American," as alleged in paragraph 20 of the Complaint.

17.    Neither Plaintiff nor anyone on Plaintiff's behalf has conducted any investigation, statistical analysis, test, comparison or study of the relevant geographic area for comparison with CBRE, Inc.'s workforce statistics.

> 19.    Neither Plaintiff nor anyone on Plaintiff's behalf has conducted any investigation, statistical analysis, test, comparison or study of the relevant job market and applicant pool for comparison with CBRE, Inc.'s workforce statistics.

(Id.)

The request for admissions were served on Plaintiff on June 16, 2010, the same day his first attorney filed a Motion to Withdraw.  (Doc. # 16.)  The Court granted the Motion to Withdraw after a hearing on July 2, 2010.  (Doc. # 19.)  Parker's current counsel entered his appearance on August 4, 2010, one day before Defendants entered the admissions into evidence.  (Docs. ## 24, 23.)  Thus, for most of the thirty days provided in Rule 36(a), Parker was without counsel.

Despite this procedural posture, Plaintiff has not to date filed a motion to withdraw or amend these admissions.  The language of Rule 36(b) is clear.  A matter is conclusively established absent *a motion* to be withdrawn or amended.  See Fed. R. Civ. P. 36(b); see also American Auto. Ass'n (Inc.) v. AAA Legal Clinic of Jeffereson Crook, P.C., 930 F.2d 1117, 1120 (5th Cir. 1991) (holding a district court erred in *sua sponte* deciding to withdraw a Rule 36(a) admission).  Accordingly this Court is bound to accept these admissions as fact. See Tillamook Country Somker, Inc. v. Tillamook County Creamery Ass'n, 465

F.3d 1102, 111-12 (9th Cir. 2006) (noting that admissions under Rule 36(a) are

binding and courts cannot ignore them).

On these admissions alone the Court finds sufficient reason to

grant Defendants' motion for summary judgment.  In Admission 11, for example,

Plaintiff concedes that consideration of Plaintiff's credit history was not an

unlawful practice because it was related to the responsibilities of the position for

which plaintiff applied.  (Doc. # 23. ¶ 11)  Given this admission there can be no

genuine issue of material fact relating to Defendants liability.  Plaintiff also admits

that he has no statistical evidence that Defendants use of credit scores has a

disparate impact on African-Americans.  (Id. ¶ 13.)  Nor has Plaintiff conducted

any investigation to that end.  (Id. ¶¶ 17, 19.)  Given these admissions there is no

genuine issue of material fact that Plaintiff could present any evidence sufficient to

survive the required showing for either a disparate impact or disparate treatment

claim.

     ii.   Title VII Claims

Even without the Judicial Admissions, this Court concludes that

there is no genuine issue of material fact and Defendants are entitled to judgment

as a matter of law.  As noted, for a claim of disparate treatment under Title VII, a

Plaintiff must show that: (1) he belongs to a protected class; (2) he was qualified

for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably.  <u>Chuang</u>, 225 F.3d at 1123.  There is no question here that Plaintiff (1) is a member of a protected class and (3) was subject to an adverse employment action.  Excepting the contingent offer Plaintiff received from Defendants, however, Plaintiff has not proffered any evidence that he was qualified for the position.  Nor has Plaintiff contested the contents of the credit check that Defendants used to determine he was unqualified for the position.  Further, there is no evidence on the record that suggests other similarly situated individuals outside of his protective class were treated more favorably by the Defendants.[10]  Indeed, the uncontroverted evidence demonstrates the individuals responsible for withdrawing Parker's contingent offer were not aware of his race.  (Doc. # 26-7,

---

[10]Perhaps Plaintiff's Exhibits 19 through 30 are intended to be evidence of such conduct.  These exhibits, each entitled "EEOC Inquiry by Respondent," seemingly list EEOC allegations against CBRE in various cities across the country, but do not clearly specify so.  Further, as noted *supra,* these exhibits are not properly authenticated.  Even if properly authenticated, the reports are confusing at best.  They list no dates nor do they specify which of the columns on each report are relevant.  On their face they do not make sense and Plaintiff does not explain them beyond stating that the EEO C provided them to him.  To the best of the Court's ability to understand what these exhibits demonstrate without guidance from Plaintiff, they raise no genuine issue of material fact.

ERC ¶¶ 24-25; Doc. # 26-3, Caplan ¶ 6.)  Plaintiff has failed to make a *prima facie* showing of disparate treatment and cannot shift the burden to the Defendants.[11]

Even assuming that Plaintiff did not want to proceed under the McDonnell Douglas burden shifting scheme but instead wanted to "produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the defendant,]" Plaintiff does not point to, and the Court cannot find, anything in the record that suggests Defendants were motivated by a discriminatory purpose.  McGinest, 630 F.3d at 1122.  Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment with respect to Count I of the Complaint.

Plaintiff cannot survive Defendants' Motion for Summary Judgment with respect to Count II either.  As noted to establish a *prima facie* case of disparate impact, the plaintiff must: 1) identify the specific selection criteria being challenged; 2) show disparate impact; and 3) prove causation.  Rose, 902

---

[11]Even if Plaintiff managed to shift the burden to the Defendants as required by McDonnell Douglas, 411 U.S. at 802, Defendant has articulated a legitimate nondiscriminatory reason for the challenged action, *i.e.* that credit checks are a good indicator of financial responsibility and an Associate Accountant in Defendants' company must be financially responsible.  In response Plaintiff would have to demonstrate that it was more likely that Defendants had a discriminatory motivation or that their decision is unworthy of credence.  Texas Dep't of Cmty. Affairs, 450 U.S. at 256.  Plaintiff has made no such showing.

F.2d at 1424.  The sole piece of evidence that clearly addresses this point is Plaintiff's Exhibit 34, the legislative history of a Hawaiian statute.  As noted *supra*, it contains double hearsay and is not admissible.  Even assuming it was admissible the exhibit cites generally only to studies that suggests racial or ethnic minorities are more likely than White to have low average credit scores.  The exhibit provides no specific details and explicitly qualifies its findings as limited.  Beyond that there is no evidence in the record that credit checks have a disparate impact on racial or ethnic minorities.  This evidence is insufficient to even raise an inference of discrimination, much less prove it.  <u>Garcia v. Spun Steak Co.</u>, 998 F.2d at 1486 ("[P]laintiffs must do more than merely raise an inference of discrimination . . . ; *they must actually prove the discriminatory impact at issue*." (emphasis added) (internal quotations omitted)).  Thus, the Court **GRANTS** Defendants' Motion to Dismiss with respect to Count II of the complaint.

III.   <u>Plaintiff's Motion For Enlargement of Time to Obtain Declaration of an EEOC Investigator</u>

In light of the foregoing conclusions this Court will not grant Plaintiff's motion for an enlargement of time to obtain the declaration of Tim. Riera, Director of the EEOC.  It is worthy of note that Plaintiff does not explain how the declaration of Mr. Riera would cure any of the problems with the

31

Plaintiff's Exhibits.  The only documents that Mr. Riera could authenticate by personal knowledge would be Exhibits 1 and 2, neither of which were contested by the Defendants.  Therefore, Plaintiff's Motion for Enlargement of Time is **DENIED**.

CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Strike (Doc. # 72), **DENIES** Plaintiff's Motion for Enlargement of Time (Doc. # 76), and **GRANTS** Defendants' Motion for Summary Judgment (Doc. # 25).

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 21, 2010.



_____
David Alan Ezra
United States District Judge

Alex Parker v. CB Richard Ellis Hawaii, Inc., a Domestic Profit Corporation; CB Richard Ellis, Inc., a Foreign (Delaware) Profit Corporation; DOE Individuals 1-50; Doe Entities 1-50; Doe Corporations 1-50; Doe Partnerships, Civil No. 09-00574-DAE-LEK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE. GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR ENLARGEMENT OF TIME